In the Matter of Linda K. PIERCY, Debtor.

Stacey RUSSELL and Norbert K. Davis, Plaintiffs,

v.

Linda Kay PIERCY, Defendant.

Bankruptcy No. 88–03975–SJ–7–DJS.
Adv. No. 88–0734–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Feb. 3, 1989.

Michael Keleher, Duggan, Keleher & Svetlic, P.C., Kansas City, Mo., for plaintiffs.

George Scott Murray, St. Joseph, Mo., for defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE DECLARING DEFENDANT'S INDEBTEDNESS TO PLAINTIFFS IN THE SUM OF $4,500 TO BE NONDISCHARGEABLE IN BANKRUPTCY**

DENNIS J. STEWART, Chief Judge.

█ The plaintiffs have filed an action in this court to determine the dischargeability *vel non* of a state court judgment obtained by them against the defendant Linda K. Piercy in the sum of $4,500.00. It is contended that the state court judgment is nondischargeable in that it represents a liability created by fraud within the meaning of section 523(a)(2) of the Bankruptcy Code. The state court judgment upon which plaintiffs predicate their claim does not disclose the nature of the cause of action upon which the judgment was rendered. The defendant asserts that, because the judgment of the state court does not sound in fraud, the complaint of the plaintiffs for a decree of nondischargeability must be dismissed because the plaintiffs, having failed to achieve a determination on the fraud issue in state court, are bound by the doctrine of collateral estoppel and cannot therefore adduce evidence of fraud on the dischargeability issue in this court. But, according to the governing decision of the Supreme Court of the United States, *Brown v. Felsen,* 442 U.S. 127, 140, n. 10, 99 S.Ct. 2205, 2213, n. 10, 60 L.Ed.2d 767 (1979), collateral estoppel applies in dischargeability cases only if there has been an actual state court determination on the same issue as is the material issue in the dischargeability determination.[1] Accordingly, pursuant to that authority, the bankruptcy courts, when, as in the case at bar, there has been no actual state court adjudi-

---

1. "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of section 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court."

cation of the issue, have freely permitted evidence on that issue to be introduced in the bankruptcy court.[2] And it is only the bankruptcy court which may determine the dischargeability issue in a case such as that at bar.[3] Accordingly, the defendant's motion to dismiss this action has been denied by this court.[4]

In the hearing of the merits of this action, which was conducted on January 20, 1989, in St. Joseph, Missouri, the credible, admissible evidence of record showed that the plaintiffs purchased a house from the defendant, located at 4106 Mitchell in St. Joseph, on or about August 25, 1987; that the plaintiffs, based upon alleged flaws and defects in the house thus sold to them, filed a suit in the Associate Circuit Court of Buchanan County on April 13, 1988, alleging fraudulent misrepresentation by the defendant with respect to certain defects in the house; that trial was held in the state court, at the conclusion of which that court, on June 2, 1988, issued a judgment in the sum of $4,500 for the plaintiffs and against the defendant; that the parties agreed in the course of the trial of the dischargeability issue in this court that $4,500 is the correct amount of damages if a nondischargeability decree should be entered; that, on September 13, 1988, defendant filed her within bankruptcy petition; that, at the time of the sale of the subject house by defendant to plaintiffs on or about August 25, 1987, there was considerable fire damage to the studding, inner walls, wiring and rafters; that this was not discovered by the plaintiffs until early 1988 when they had reason to remove a tile from the ceiling, an operation which caused a good portion of the ceiling to collapse; that it was thereupon revealed that a substantial portion of the ceiling and the structure above it had been damaged; that it was thereby further revealed that damage to the roof and rafters had been concealed by the placing of a plastic sheet above the ceiling, which temporarily held the water above it and seemed to delay discovery of the damage; that, further, at the time of the sale of the house by defendant to plaintiffs on or about August 25, 1987, there was a large hole in the bedroom floor fully 3 or 4 feet in diameter, which had been concealed by placing a large bed over it; that, in her testimony in the hearing of the merits of

---

**2.** "Upon a judgment on the claim in the state court, the bankruptcy court can review the record, hear additional evidence if offered or desired, and then make a determination on the crucial issue of dischargeability." *In re Mountjoy,* 368 F.Supp. 1087, 1096 (W.D.Mo. 1973); *Matter of Naughton,* 44 B.R. 670, 671 (Bkrtcy.W.D.Mo.1984).

**3.** "(T)he debtor shall be discharged from a debt of a kind specified in paragraph (2) ... of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the (bankruptcy) court determines such debt to be excepted from discharge under paragraph (2) ... of subsection (a) of this section." Section 523(c) of the Bankruptcy Code.

**4.** On December 15, 1988, the court issued its order denying the defendant's motion to dismiss, stating that: "The defendant moves to dismiss the complaint, stating that the state court judgment 'was silent on any issue of either positive or implied fraud.' But a trial court may not dismiss an adversary complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45–6 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80] (1957). A plaintiff suing in the bankruptcy court for a determination that his state court judgment is nondischargeable is ordinarily not bound by the state court judgment, unless it purports to negative or support the very same facts which are necessary to the determination of dischargeability *vel non.* 'If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of section (523), then collateral estoppel, in the absence of a countervailing statutory policy, would bar litigation of those issues in the bankruptcy court.' *Brown v. Felsen,* 442 U.S. 127, 139, n. 10 [99 S.Ct. 2205, 2213, n. 10, 60 L.Ed.2d 767] (1979). But the defendant states in her motion that the judgment was silent on the issue of 'positive or implied fraud' and that no evidence was offered on that subject. Under such circumstances, the bankruptcy courts have permitted the record before the state trial court to be supplemented by evidence on the dischargeability issue adduced in the bankruptcy court. 'Upon a judgment on the claim in the state court, the bankruptcy court can review the record, hear additional evidence if offered or desired, and then make a determination on the crucial issue of dischargeability.' *Matter of Naughton,* 44 B.R. 670, 671 (Bkrtcy.W.D.Mo.1984), quoting *In re Mountjoy,* 368 F.Supp. 1087, 1096."

this action on January 20, 1989, the defendant stated that she knew of the fire which had taken place some years previously and that she knew of damage to the roof, although she denied knowing the particular extent of it or having ever been in the attic, which she nevertheless claimed to be "all insulated"; that the defendant further testified that, if there had been a hole in the bedroom floor fully 3–4 feet in diameter, the bed would not have fit over it, but rather would have fallen through the floor, and that, in selling the house to the plaintiffs, the defendant did not make any express representation or warranty.[5]

### Conclusions of Law

■ Section 523(a)(2) of the Bankruptcy Code makes at least two species of fraud the basis for nondischargeability decree; (1) fraudulent misrepresentations which are characterized by overt misrepresentations knowingly made by a debtor and detrimentally relied on by the plaintiff[6] and (2) "false pretenses," i.e., knowing and fraudulent conduct which, in the absence of an overt misrepresentation, nevertheless induces detrimental reliance by a plaintiff. Both the law of the State of Missouri and the law applied in federal bankruptcy courts recognize that failure to apprise a prospective home purchaser of latent defects in the structure of the home constitutes actionable fraud. Under Missouri law, even without an overt misrepresentation, the courts recognize the concealment of such defects to be the equivalent of fraudulent misrepresentation. "[A] representation is not confined to words or positive assertions; it may consist as well as deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraudfeasor to obtain an undue advantage over him.... If he fails to disclose an intrinsic circumstance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it." *Lindberg Cadillac Company v. Aron,* 371 S.W.2d 651, 653 (Mo.App.1963). "[M]ere silence can amount to an actionable fraud [if it] relate[s] to a material matter known to the party sought to be held.... There must also exist a legal duty on the part of the latter to disclose, which duty may arise from a relation of trust, from confidence, any quality of condition, or superior knowledge which is not within the fair and reasonable reach of the other." *Vendt v. Duenke,* 210 S.W.2d 692, 699 (Mo.App. 1948). "In determining this question [of whether there was a misrepresentation] we must consider ... the actions of ... defendants in concealing the condition of the home and the failure ... to disclose this to the plaintiff." *Barylski v. Andrews,* 439 S.W.2d 536, 539 (Mo.App.1969). In the last case, it was held that concealment of "the seriously burned condition of the home which was concealed by the painting, papering, plastering, and wallboarding" was a "material ... defect," with knowledge of which the plaintiffs could not be charged. 439 S.W.2d at 539. It was further held that the duty of the defendants in that case "to speak out arose from their superior knowledge which was not within the fair and reasonable reach of the plaintiffs." *Id.* at 540. The federal bankruptcy law recognizes the same "duty to disclose" as fraud under § 523(a)(2)(A) under the rubric of the false pretenses.[7]

---

5. Further, the defendant does not deny that the purpose of placing the bed where it was placed was to hide the hole in the floor, but she states that this was done at the behest of the real estate agent. This testimony nevertheless constitutes an admission of her accomplishing actions designed and calculated to mislead the plaintiffs.

6. See *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975) ("Courts have consistently held that in order for section 17(a)(2) to bar a discharge, the party alleging fraud must prove actual or positive fraud, not merely fraud implied by law.")

7. " 'False pretense' generally denotes a misrepresentation implied from purposeful conduct creating a false impression." *Matter of Garthe,* 58 B.R. 62, 64 (Bkrtcy.M.D.Fla.1986). "(A) representation may be implied, rather than expressed." *In re Brooks,* 4 B.R. 237, 238 (Bkrtcy. S.D.Fla.1980). "Sec. 17a(2) uses two phrases, 'false pretenses' and 'false representations.' False pretenses refers to implied representations

**956**

Under the facts found above, there can be little question of the materiality of the defects. The burned condition of the ceiling, rafters and roof made it inevitable that the plastic placed above the ceiling could only temporarily delay the necessity for costly repairs. The same is true of the hole in the bedroom floor which could only temporarily be concealed by the bed and had sooner or later to be discovered and repaired. The duty to disclose these deliberately concealed defects certainly applied under the facts and circumstances of the case at bar.

It appears to be the principal factual contention of the defendant that her knowledge of the defective conditions of the structure was in fact not superior to that of the plaintiffs; that she was equally in the dark as to the precise extent of the structural and fire damage. She asserts that it was her former husband who superintended the repairs to the roof and ceiling which had been occasioned by the former fire. But her contention that she did not know the condition of the house above the ceiling is contradicted by her own testimonial contention that she knew that the attic area was fully insulated. And her testimony concerning the hole in the bedroom floor was carefully phrased not to deny any and all knowledge of its existence, but only to state that, if the hole had been a full four feet in diameter, the bed would have fallen through it. Such testimonial statements are thoroughly consistent with a finding that there was a hole in the bedroom floor, of which fact she knew, but that she did not believe it to be a full four feet in diameter. Otherwise, she admitted knowing that the fire damage had been so extensive that it required some reroofing and that she did not apprise the plaintiffs of these material facts. " 'If in addition to the party's silence there is any statement, even any word or act on his part, which tends affirmatively to a suppression of the truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observation from the real facts, then the line is overstepped and the concealment becomes fraudulent." *Ash Grove Lime & Portland Cement Co. v. White*, 361 Mo. 1111, 238 S.W.2d 368, 372 (1951). The defendant's own statements thus show that she had knowledge of the defective conditions and that she did not disclose them to plaintiffs, when she had to know that the plaintiff would be vitally interested in such material conditions.

Accordingly, this court accords no credibility to the testimonial, conclusionary denials by the defendant that she misled the plaintiffs. See *Matter of Van Horne*, 823 F.2d 1285, 1287, 1288 (8th Cir.1987) to the following effect:

"[b]ecause direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred ... When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor 'cannot overcome [that] inference with an unsupported assertion of honest intent.' ... The focus is, then, on whether the debtor's actions 'appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor.' ...."

This court therefore concludes that the evidence before it fully justifies the ultimate finding that the indebtedness of $4,500.00 evidenced by the state court judgment was created by the fraud of the defendant and therefore should be declared to be nondischargeable in bankruptcy.

The defendant seized upon the plaintiffs' casting their complaint as one sounding in "fraudulent misrepresentation" to object to all evidence in the trial of this action of any fraud except that based upon an overt misrepresentation. The court denied all the objections thus made, not only because of

---

or conduct intended to create and foster a false impression." *In re Parker,* 1 B.R. 176, 179 (Bkrtcy.E.D.Tenn.1979). "Fraud may consist of concealment or intentional nondisclosure as well as affirmative misrepresentation of materi-

al facts ... A debtor's silence may amount to a materially false representation prohibiting discharge of an indebtedness." *Matter of Thomas,* 12 B.R. 765, 768 (Bkrtcy.N.D.Ga.1981).

the equation justified by the above cited authorities between an overt misrepresentation and misleading acts or failure to disclose a material defect, but also because, under the relevant provisions of Rule 15(b), F.R.Civ.P., amendment of the pleadings to conform to the evidence of false pretenses was appropriate. That rule pertinently provides as follows:

"*Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Accordingly, the court permitted the amendment in accordance with the dictate that such should be liberally allowed. And the court explicitly offered the defendant an adjourned hearing at which she could adduce evidence to meet the testimony which she believed was inadmissible under the plaintiffs' initial pleading. But defendant and her counsel expressly declined the offer.

For the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the state court judgment of June 2, 1988, for plaintiffs and against defendant in the principal sum of $4,500.00 be, and it is hereby, declared to be nondischargeable in bankruptcy.